## David Amberg v. Ebenezer H. Rogers.

Ejectment. The plaintiff gave in evidence deeds given on sales for delinquent taxes of 1854, 1855 and 1856, which described the land as "the west half of the south west fractional quarter of section twenty-eight, in township one south of range twelve east, containing fifty acres, more or less." Defendant showed by the records in the United States Land Office, that the southwest fractional quarter was not subdivided by government; that it contained one hundred acres, was of an irregular shape, somewhat resembling a triangle, and was patented as one parcel. No evidence was given to show by what description the land appeared on the assessment roll.

*Held*, that under the statute—which requires that where the tract is less or other than a subdivision authorized by the United States for the sale of the public lands, it shall be described for assessment by a designation of the number of the lot or tract, or of other lands by which it is bounded—the description contained in the deeds was not sufficient for the purposes of assessment.

But *held further*, that it was a good description for the purposes of a sale for taxes. If not sufficient for assessment, yet as the statute authorizes the payment of the tax on any portion of a description which the tax payer will clearly define, and a sale of the remainder, or a redemption of any such portion after sale, and as it also makes the tax deed evidence of the regularity of all the proceedings, and of title in the grantee, it must be presumed that the whole fractional quarter was properly assessed together, and the tax paid on the east half before sale, or that after sale the east half was redeemed.

*Heard October 9th. Decided November 6th.*

Error to Wayne Circuit.

Rogers brought ejectment against Amberg, to recover land described as the west half of the southwest fractional quarter of section twenty-eight, in town one south of range twelve east, containing fifty acres more or less, in the county of Wayne and State of Michigan.

On the trial, Rogers offered in evidence deeds from the Auditor General of the State, purporting to convey to the plaintiff the same description of lands contained in his declaration, given to carry into effect sales of the same for the delinquent taxes of 1855 and 1856, and as state tax lands for 1854.

Defendant objected to each of the deeds that there was no such description of lands known to the law as that contained therein. The court overruled the objection.

The plaintiff having rested, defendant introduced in

evidence the official plat book of the United States survey of the entire southwest fractional quarter of said section twenty-eight, from which it appeared that the same had not been subdivided, that it contained one hundred acres of very irregular shape, somewhat resembling a triangle. He also gave in evidence the official tract book of the United States land office, by which it appeared that said southwest fractional quarter was entered or located by J. L. Leib, as 'one parcel, and containing one hundred acres.

The evidence being closed, defendant requested the court to charge the jury, that if the whole southwest fractional quarter of said section contains one hundred acres, and was not subdivided by the government of the United States, the plaintiff can not recover. The court refused so to charge, and Rogers had judgment.

*D. C. Holbrook*, for plaintiff in error, argued that the land sold being less than a government subdivision, should have been described for assessment by the "other lands by which it is bounded," under sub. 3, §23 of the tax law of 1853: — 3 *Mich.* 172. It is no answer that the premises are or may be known by the description in the deeds, if not designated according to law : — *Blackwell on Tax Titles*, 450; 4 *Denio*, 237.

*C. I. Walker*, contra, insisted that the question was not, under the statute, how the land actually was subdivided and sold, but whether such a subdivision was *authorized by*, or could have been lawfully made under, the United States laws. That it could have been, under the act of April, 1820 (*Brightly's Dig.* 497, §123) he cited 3 *How.* 669 ; 20 *How.* 372. Clearly it was authorized by the act of April 5, 1832 : — *Brightly*, 481, §129. But even if there were no literal compliance with the requirements of the statute in the description, it is still sufficient. It is is a clear description, that gives all necessary information, and can not mislead.

Even if the description were bad for the purposes of assessment, it might still be good for the purpose of a sale or of a deed. The whole fractional quarter may have been assessed together, and the tax paid on the other part (*Comp. L.* § 837), or the owner of the other may have redeemed it after sale (*Comp. L.* § 873).

CHRISTIANCY J.:

Rogers, the plaintiff below, brought his action of eject-ment against Amberg, the defendant below, and claimed title under three several deeds from the Auditor General, on sales for the taxes delinquent for 1854, 1855 and 1856.

The plaintiff introduced these deeds in evidence, and proved that the defendant claimed title to the premises, and rested.

The defendant objected to the introduction, of the deeds, on the ground that the lands which they purported to convey were insufficiently described; which objection was overruled by the court, and the deeds admitted.

The lands are described in the declaration and in the several deeds, as "the west half of the southwest frac-tional quarter of section twenty - eight, in town one south of range twelve east, containing fifty acres more or less, in the county of Wayne and State of Michigan."

The defendant introduced in evidence the official plat of the United States survey, of the entire south west fractional quarter of said section, from which it appeared that said fractional quarter had not been subdivided, and that it contained one hundred acres, of an irregular shape, having six very unequal sides, but in general shape some-what resembling a triangle, with the acute angle at the east, formed by the center or quarter line of the section on the north, and by the rear of several claim lines on the southeast, and extending east beyond the centre of the section so as to include a portion of what would have constituted a part of the southeast quarter of the section.

had the quarter line from north to south extended beyond the east and west quarter line.

The defendant then introduced the official tract book of the United States land office, by which it appeared that the whole of said southwest fractional quarter was entered by J. L. Leib, as one parcel, containing one hundred acres, date of entry not stated. Here the defendant closed. No assessment roll was introduced by either party, nor was any evidence given tending to show by what description the land has been assessed.

Though several other questions were raised by the bill of exceptions, yet as the counsel for the plaintiff in error chose to waive them on the argument, and expressed the desire to rest the case entirely upon the insufficiency of the description, we shall express no opinion upon the other questions presented by the bill.

The first inquiry is, whether this description was sufficient for the purpose of assessment, and, if not, then secondly, whether it can be held sufficient, under the proof in this case, for the purpose of a sale for taxes. Both questions depend upon the statute.

The twenty-third section of the act of 1853 (*Comp. L.* § 804), in providing for the description of lands on the assessment roll, enacts; "The description of real estate shall be as follows:" and then proceeds in several distinct subdivisions to provide for as many distinct classes of cases. We are called upon to notice only the second and third subdivisions (it being admitted that this case does not fall within either of the others). These are: "2. If the tract be the subdivision of a section authorized by the United States for the sale of the public lands, it shall be described by a designation of such subdivision, with the number of the section, township and range. 3. If the tract be less or other than such subdivision, it shall be described by a designation of the number of the lot or tract, or of other lands by which it is bounded."

It is insisted on the part of defendant in error, that this case falls within the second subdivision, because, as he insists, it was competent for the Surveyor General, under the acts of Congress of April 24, 1820, and April 5, 1832, thus to have subdivided it into halves by a north and south line. But admitting this could be done (upon which we give no opinion), still as no such subdivision was made by the Surveyor General, and if the whole fractional quarter were now for sale in the United States land office, it could not, under any law of Congress, be sold in halves, or in any portions less than the whole, without being first subdivided by the Surveyor General, I do not think the west half of the fraction can be said to be "the subdivision of a section authorized by the United States for the sale of the public lands," within the meaning of this subdivision of our statute. Its sale could not be "authorized by the United States," until the subdivision had been previously made.

I think, therefore, the case falls clearly within the third subdivision, and having no designation by "number," it must be described by the designation of "other lands by which it is bounded." It is urged that this description is a substantial compliance with this third subdivision, because by necessary implication it designates the lands by which it is bounded. This may be said of any description provided for by any of the other subdivisions of this section, but I do not think this is a fair interpretation of the statute. One principal object of the statute doubtless was to secure such a description as would enable parties interested readily to ascertain whether their lands were taxed or advertised for sale; and the express designation of other lands by which it is bounded would be one of the best means of accomplishing this end; while an implied designation of such other lands would have little, if any, such tendency. The Legislature had a clear right to determine what should be a sufficient description for these purposes; and having thus determined the question, it is not for the court to say that

any other mode of description shall be good because it may in their opinion equally accomplish the end. Had the Legislature seen fit to adopt, in the case provided for in this subdivision, the same principle which applies to conveyances between individuals, as they have done in the fourth subdivision in reference to town or village plats, and added the words "or in some other way by which it may be known," the description would, I think, have been sufficient; but having expressly done so in the one class of cases and not in the other, it is, I think, quite clear they intended this liberal rule to apply to the one class and not to the other.

I can see no plausible ground for holding that any of these provisions should be construed as directory merely. If any provision of the act is to be construed as essential and mandatory, it must be the description of the land; the very subject matter to which most of the other provisions are auxiliary. To treat these provisions in relation to description as merely directory would be to annihilate all intelligible distinction between what is directory and what is imperative.

As an original description for assessment, therefore, the description contained in these deeds is insufficient.

But, secondly, does it therefore follow that the description is insufficient for the purpose of a sale for taxes?

If the statute had made no provision by which the description of the land as assessed might be reduced or altered before sale, then no valid sale could be made by a different description from that by which it was assessed; and the assessment roll not having been given in evidence, we should be compelled to presume the land was assessed by the same description as that contained in the deed. But the statute has expressly provided for such alteration of the description intermediate the assessment and sale. It has done this by providing (§ 49 — *Comp. L.* § 831) for the payment to the township treasurer of the tax on "a

part of any lot or parcel of land which the tax payer will clearly define," and for the return of the balance for non-payment: and by section 69 (*Comp. L.* § 851) a similar provision is made for payment on part of a tract after the return to the Auditor General: and subsequent provision is made for the sale of all lands on which the taxes remain unpaid. And since, from the nature of the case, such payment on part of a tract assessed must be a fact of very frequent occurrence, no safe presumption could, in the nature of things, arise that the land was assessed by the same description as that by which it was sold. The land may have been assessed as the whole south west fractional quarter, which would have been a good assessment, and the east half of the tract may have been paid : and if so, the balance, I think, might be sold by any description by which the land could be clearly identified. The description in these deeds, if strictly construed, defines the land with mathematical certainty. There might perhaps be peculiar cases in which the court might be satisfied such strict construction would defeat the intent of the instrument; but I can see no reason for such apprehension in this case. The description is entirely practicable, and would bound the tract on the east by a north and south line so drawn as to leave one-half in quantity on each side, and would leave both halves in as convenient a shape as any other division into portions of equal quantity.

But it is urged by the plaintiff in error, that there is no evidence that the whole tract was assessed, and afterwards reduced by payment on the other half. It is a sufficient reply to this objection to say that the contrary has not been proved.

The statute (§ 89 — *Comp. L.* § 871) declares that " the deed shall be prima facie evidence of the regularity of all the proceedings, from the valuation of the land by the assessors to the date of the deed inclusive, and of title in

the purchaser." This provision applies to the deeds for the taxes of 1855 and 1856, and a similar provision — (§ 124 *Comp. L.* § 906) to the deed for the taxes of 1854, made on sale of the premises as State tax lands.

The effect of these provisions is, I think, to change the burden of proof to the party claiming against the tax deed, and to raise the presumption that every thing has been done which was competent to be done under the statute, to render the sale of the land described in the deed a valid sale: in other words, if any proceedings might have been had under the statute which would authorize the sale of the land described in the deed, they must, until a reasonable presumption to the contrary has been raised by proof, be presumed to have been taken in accordance with the statute. Such was the view taken of a less forcible presumption in the act of 1843, by the late Supreme Court, in *Lacy v. Davis*, 4 *Mich.* 140, and I can see no ground for doubting its correctness. Indeed I am unable to see how any intelligible effect short of this can be given to the presumption which the statute creates.

There was, I think, no error in the ruling of the court below on this point, and the judgment should be affirmed.

MANNING J.:

I have been unable to bring my mind to the conclusion that the description in the deed is not good for the purposes both of an assessment, and of a sale where the tax has been paid on a part of an entire description. That it is good for the latter I have no doubt; and that being the case it seems strange it should not also be good for the former.

The whole statute should be liberally construed. It is to raise a revenue for the support of government. This is its primary object; all else is secondary: and it should be construed in such a way as to secure the revenue, and at the same time protect the rights of the tax payer and

a purchaser at a tax sale of lands on which the tax has not been 'paid. The principal, if not the only, object of the description of real estate on the assessment roll, is to secure the lien of the State for the tax on the premises assessed. Except to secure such lien, there is no more reason for describing real estate than personal property on the assessment roll. If we give the act a strict construction, looking to the letter only, and not to its spirit, the description of a subdivision of a section, say an eighty or a forty, in any other way than by the United States survey, although it might be by the lands bounding it, with the names of the persons in possession or owning such lands, would not be a good description. I can not think such to have been the intention of the Legislature; or that where the land to be described is less than a forty, say the east or west half of the northwest quarter of the northwest quarter of a section, and it should be assessed by that description, the assessment would be void because it was not described by the land surrounding it, while the former description would, for all practical purposes, be a better description of the land than the latter, and one that would in nine cases in ten be used in ordinary conveyancing.

The language of the act, I admit, is imperative; but *shall* is sometimes construed to mean *may*, and should always be so construed when necessary to give effect to the intention of the law-giver; which intention I think in the present instance was to secure a *perfect description* of the land, with a view to render the lien thereon for the tax operative. " A thing which is within the intention of the makers of a statute, is as much within the statute as if it were within the letter of the statute; and a thing which is within the letter of the statute, is not within the statute unless it be within the intention of the makers." (Thompson Ch. J. in *The People v. The Utica Insurance Co.* 15 *Johns.* 380.)

By the construction I give the statute no one is injured; the revenue is secured to the State; and whether the tax payer intended to evade his duty to the State or not, he can not say the description was so imperfect he did not know his land was advertised to be sold at the tax sale; and the purchaser is protected, and nothing more, in the right the law gives him and held out to him as an inducement to attend the sale and bid off the property. I think the judgment should be affirmed.

CAMPBELL J.:

I agree in the conclusion of my brother Christiancy, that the description of land in the deeds now in controversy is entirely invalid for purposes of assessment. Whether, as between individuals, the west half of an irregular fraction would be construed as bounded by a north and south line dividing it into portions of equal area, is, I think, doubtful as a general proposition; but in the view which I have taken of the case, is not important, and I express no decided opinion upon it. I think that, as soon as it was shown that no such government division existed, the burden of proof was thrown upon the tax purchaser to explain how a description improper for assessment became proper, if proper at all, when used in a conveyance from the Auditor General.

The tax deed is prima facie evidence of the regularity of the proceedings under the law, and of title, unless containing on its face proof of illegality. I am disposed to concede that, until the land office proofs showed the contrary, it was fair to presume that the government had made a subdivision answering to that in the deeds, and that there was nothing on the face of the deeds to impeach them. But the land office proofs having shown that no such division had been made, I think their production destroyed the purchaser's prima facie case, and put him to the necessity of showing a good assessment, and a redemption of such por-

tions as should bring him within the law, and authorize the conveyance of the remnant of land described. Had the deed shown on its face that the land conveyed was the balance left unredeemed of a tract properly described, this difficulty would have been obviated, as it would then appear on the face of the deed whether the original description was good, and whether the redemption was of a tract so clearly described as to be within the law. In the absence of any such explanation, I think it more reasonable to presume that the land sold corresponds with the original assessment. The intendments made to help out deeds between individuals, arise out of the desire of the law to enforce mutual contracts according to their intent. But in *ex parte* proceedings to divest title, those who rely on them must, I think, place themselves where no ambiguity or difficulty can arise, and conform rigidly to the statute. The law can not infer any intention in the land owner to be deprived of his freehold. Where the statute prescribes a description of a certain kind, no other one will suffice, although quite as clear and plain.

I do not know that any especial reliance is placed upon the presumption of title as well as of regularity mentioned in the statute. I do not imagine it would in any way strengthen the other presumptions if it appeared on the face of the deed that the proceedings were irregular, or if it appeared so otherwise. Regular proceedings would give title, and irregular ones could not. It is not a new provision entirely. Under the Revised Statutes of 1838, it was enacted that the Auditor's deed should "be conclusive evidence of the title: Provided such assessment and all other proceedings in the premises were regular according to the provisions of this title." *R. S.* 1838, *p.* 98. By changing this section and raising a prima facie presumption of regularity, the effect of the Statutes of 1838 would have been greater than that of our present statute. The occasion of the introduction of the phrase as it now

stands was the provision for selling lands bid off to the State for taxes. These were originally sold under a separate advertisement, and as a distinct class, requiring several proceedings to complete their disposal. Under our early statutes, it had been held that when a deed was made by a statute "*evidence that the sale was regular, according to the provisions of this act*," it proved nothing but the treasurer's action immediately connected with the sale, and was no evidence that the anterior steps were regular: *Scott v. Detroit Young Men's Society*, 1 *Doug. Mich.* 119; *Latimer v. Lovett*, 2 *Ibid.* 204; *Ives v. Kimball*, 1 *Mich.* 308. Upon sales of State tax lands it is expressly provided that the deed shall convey "*all the right, title and interest of the State in and to said state tax lands, acquired by virtue of the original sale or sales to the State.*" A deed of such an interest, if only made evidence of the correctness of all the proceedings to its date, would probably, under those decisions, have been no evidence of any proceedings except those under the special provisions concerning State tax lands, which originally formed no part of the general tax law. A provision making the conveyance *prima facie* evidence of title, would therefore have, in such cases, simply the effect of placing these sales on the same footing with ordinary tax sales, which was undoubtedly the design of the Legislature when that provision was adopted. It was not until 1853 that, in drawing up a new law covering the whole ground, the reference to presumption of "title" was made substantially the same in regard to ordinary and state tax land conveyances. *L.* 1853, *pp.* 151, 159. Compare *R. S. of* 1846, *pp.* 114, 115, 118; *L. of* 1843, *pp.* 58, 80; *L.* 1845, *p.* 81; *L.* 1846, *pp.* 13, 14, 88.

It seems to me that under the somewhat strict rules which are justly applied to all proceedings of this character, no presumption of regularity can be made to reach any of the steps not directly connected with the regular

course of action in the ordinary line of duty of the State officers, unless some reference is made to them in the deed. And a reference to the various provisions in regard to redemptions, to my mind strengthens this view. And in referring to them, it must be borne in mind, that any redemption of less than a whole parcel, unless the interest redeemed is an undivided one, is made upon principles not consistent with the just rules of taxation under the Constitution. The east half of a parcel assessed may contain valuable buildings and improvements, and the west half may be waste land, so that the basis of nine-tenths of the tax is in the value of the former. By paying one half of the tax, the owner of the improved portion shifts his own burdens upon his neighbor. Such cases may often arise, and have arisen heretofore. Presumptions of an entire assessment, and of the redemption of a specific portion, made to sustain a defective description, are not, I think, to be made without the clearest and most unequivocal legislative requirement.

The earliest partial redemption permitted is when the roll is in the hands of the township treasurer. He is required to receive the taxes on a part of a lot *which the tax payer will clearly define,* and if the tax on the rest is not paid, he is to "enter a specification thereof in his return to the county treasurer." — 1 *Comp. L.* § 831. He is required to make in this return a full and perfect description of the premises from his tax roll; and it must be compared by the county treasurer with the original tax roll, and be found a "true transcript from the same:" §§ 833, 834. I do not see how this is complied with, unless the original description is given with a specification of the "clearly defined" part which is redeemed. A sale by such a description would leave open no door for mistake. Any other definition of the remainder would be, to say the least, extremely liable to error in any but perfect and square government subdivisions.

AMBERG v. ROGERS.

This view impresses me the more strongly, because so long as the land remains returned for taxes and unsold, in the Auditor's office, no part less than the entire tract can be redeemed at all, unless it be an undivided interest: § 851. The terms used in allowing a redemption *after but not before sale*, of less than the whole parcel, are "any part or interest in the same;" and the portion of the whole sum to be paid is "*such proportion thereof* as the part or interest redeemed shall amount to:" § 873. Section 907 contains a similar provision concerning tax lands bid off by the State, allowing the redemption of any part or interest "clearly defined." After sale, therefore, probably a defined part may be redeemed.

Whatever may have been the reason which induced the Legislature to require a particular kind of description for purposes of assessment, it seems to me the same occasion exists for preserving similar rules in regard to redemptions. And in cases of irregular parcels, it would often be unsafe for the state authorities to undertake to make a new description of a residuary portion without showing the amount originally assessed. In regard to undivided interests, it is necessary to show what interest is redeemed, and to whom it belongs, "that it may be excepted in case of the sale for the tax on the remainder:" § 831. Where the deed does not show a redemption, and does not cover a full assessable description, I see no good reason for raising any presumptions concerning what, if true, is the act of a private person, and not within the discretion of any public officer, and in which the latter is merely an agent to receive money which may be lawfully tendered him by any one who chooses to redeem. The law which now requires some show of ownership in the redeemed tract, and that it is confined to the redeemed portion, was not in force when these transactions took place. The right to redeem was, before the statute of 1858, subject to no such condition: — *L.* 1858, *p.* 186. It was a private,

not an official act, and can not, I think, without more specific language, be classed among the proceedings concerning which the law can raise any presumption of correctness.

I think the court erred in not requiring proof of a valid assessment, after the description had been shown to be incorrect.

*Judgment affirmed.*