### R. E. Case v. J. M. Dean et al.

*Circuit Court Commissioner: Tax titles.* The provision in the law of 1858 (§ 101, p. 186) authorizing proceedings before a Circuit Court Commissioner to test the validity of tax titles in very plain terms purports to act on rights, and not on remedies. It is therefore absolutely void. *Waldby v. Callendar*, 8 *Mich.* 430.

*Supervisors: Valuations of real estate: Assessment roll.* On the trial, evidence was admitted tending to show an erroneous footing of the valuation of real and personal property upon the assessment roll, and that the Board of Supervisors in equalizing the township assessment had adopted and confirmed valuations of property according to such erroneous footing.

CASE v. DEAN ET AL.

*Held*, that the rolls being in evidence before the jury, proof by witnesses as to the true footings of the rolls was immaterial, and that it was no part of the duty of the Supervisor to foot up the valuations of real and personal estate on the rolls, as a pre-requisite to equalization by the Board.

*Board of Supervisors: Equalization: Jurisdiction.* The power of equalization by the Board being confined to the real estate, and the whole subject being under their complete jurisdiction they may adopt their own means of reaching the result; and when that result is reached, it is conclusive and cannot be invalidated by evidence that they had adopted as a basis an erroneous footing or aggregate of the valuations returned by the Supervisor.

When any alteration is made in the aggregate valuation of the real estate, the additions or deductions so made may be expressed in any form which may by calculation be reduced to a percentage.

*Effect of erroneous footing by the Board, of the valuation of personal property.* In ascertaining the amount of State and County taxes to be apportioned among the several townships, an erroneous footing by the Board of the valuations of *personal* property as appraised by the Supervisors will not invalidate the tax unless the error has the effect to increase the tax to be borne by the parcels of land in question beyond its just proportion.

*Fraudulent bidding at tax sale, effect of.* When a purchaser bids off property at a tax sale, the fact that a combination existed to prevent certain lands from being sold to other bidders, but to which he was not a party and of which he was ignorant, will not vitiate his purchase.

*Omission of assessment of one mill tax, effect of.* The one mill tax required to be assessed for township library and school purposes, (*Comp. L.* § 2350) was not placed on the tax roll in the column of school taxes as required by law, and did not appear by the roll to have been assessed at all. But the amount of taxes stated in the column of state, county and township taxes was too much (according to the valuation and amount to be raised) by just the amount of a one mill tax on the valuation of the tracts. *Held*, that the jury were not at liberty, for the purpose of sustaining the tax title, to find that the one mill school tax had been added to or included in the state, county, and township taxes; but that the excess in the column of the latter taxes could not be thus explained; and that the sale of the lands for the taxes were thereby rendered void. The statute requiring this one mill tax to be stated in the column of school taxes is not merely directory, but mandatory.

*Power of Superior to assess: Clerk's certificate: Void sale.* The certificate of the township clerk stated that the sum of $200 had been voted for township purposes at the annual meeting. It appeared also from the warrant attached to the tax roll, for the year 1857, that the taxes in the column of state, county and township taxes in one parcel of land was 15 cents in excess, and in another 6 cents, according to the valuations and amounts to be raised. *Held*, that the statute presumption in favor of the tax title did not extend so far as to require or authorize the presumption that another certificate had been given for a further sum; that the statute requiring and contemplating but one certificate, the proof of one did of itself raise a presumption against the existence of another not shown to have existed.

The authority to tax being fixed by the statute must be strictly pursued.

The Supervisor can only assess such taxes as are properly certified to him and such as the law makes it his duty to assess without such certificate; any material excess, therefore, in the state, county, or township tax — and which are all blended in one column — will render the taxes in such column void; and a sale based on such tax will be void.

CASE *v.* DEAN ET AL.

*Tax title:* *Burden of proof.* While the holder of a tax title may rest upon his deed until the opposite party introduces such evidence as, in the absence of all counter testimony, will afford reasonable ground for presuming the proceedings anterior to the deed to be irregular, yet when this is shown, the burden of proof is thrown upon the holder of the tax title.

*Auditor General's deed:* *Presumption of regularity.* To overcome the presumption of regularity in the Auditor's deed, plaintiff must show some substantial error affecting injuriously the owner of the land in the raising, return, assessment or collection by sale for the taxes levied.

*Tax roll:* *Error in computation.* The tax roll upon its face showed an error of ten cents, in the aggregate amount of taxes as carried out opposite a certain parcel of land; but which the County Treasurer corrected before the sale. *Held*, that as this could not injure the owner of the land, it must be disregarded.

*Heard April 3d, 4th and 5th. Decided July 11th.*

Error to St. Joseph Circuit.

This was an action of ejectment by the owner of the fee, brought against the plaintiff in error, who claimed the premises by virtue of two deeds from the Auditor General, made on sales for the years 1856 and 1857.

The tax deeds had been recorded in the counties where the land was situated, more than two years before the commencement of suit.

The plaintiff below obtained judgment in the Circuit Court.

The case comes up on numerous exceptions taken to the rulings of the Court below, and which are stated in the opinion.

*H. F. Severens* and *G. V. N. Lothrop*, for plaintiff in error.

1. It was not competent to show by witnesses the actual footing of values of real estate on the assessment roll.

*a.* The final aggregate of values of real estate is fixed by the Board of Supervisors. This then becomes the legal basis for the assessment of taxes. *Laws* 1853, § 27, *p.* 137; § 31, *p.* 138.

It is to be observed that no footing of the valuation is required by law. The footing is but an act of computation. The roll is legally certain without it.

CASE v. DEAN ET AL.

The Supervisors, by their process of equalization, determine what shall stand as the aggregate for the purpose of levying the taxes. This they may do either by stating the per cent. to be added or deducted, or by completing the computation themselves and stating the result.

They are also required to determine and state the total aggregate of real and personal estate of each town as determined by them.—*Laws* 1853, §§ 29, 30, *p.* 137.

This must be taken as the final and authoritative basis for the levy of taxes, and not subject to any further remission. — 7 *Barb.* 127; 7 *Id.* 133; 16 *Id.* 244; 19 *Id.* 22; 21 *Id.* 207.

*b.* These observations apply to the evidence put in from the blank pages of the assessment rolls. It seems to have been assumed that there were footings made by the town assessor. But there is no evidence of this. Even if there were, it would be but a volunteer act of the assessor, and of no obligation, validity, or force whatever. It was utterly immaterial.

Yet this evidence constitutes an important part of the foundation on which the counsel for plaintiffs below, and the Court, placed their case.

2. The plaintiffs below were allowed to prove what is called a "practice" among bidders in St. Joseph county, not affecting the land in question, nor including the defendant below.

It is not necessary for us to consider what might be the effect of a conspiracy to deter bidders brought home to Mr. Case. That is not the thing proved or offered to be proved.

The plaintiffs sought to show, 1st, that persons present at the sale frequently proclaimed "That is my land." 2d, that this frequently led to a withdrawal of competing bids.

There is nothing unlawful in such acts. They do not constitute a conspiracy. They bind no one. The State does not suffer. At any rate, so far as the defendant below was concerned, the matter was *res inter alios.*

No evidence was given connecting either the defendant or the 'land in question with the acts proven. Without such a foundation the acts of entire strangers cannot be admissible. — 1 *Greenl. Ev.* § 111; 9 *Mich.* 434; 4 *Pick* 108.

Whether the acts complained of would have authorized the County Treasurer in adjourning the sale, or in refusing to receive the bids of certain parties, does not concern us here.

As he proceeded with the sale in good faith — and as the defendant below bought in good faith, and received his deed on such sale — it cannot be impeached by misconduct of strangers, if indeed any misconduct there were.

3. The defendant below showed title to the N. W. ¼ of sec. 26 by two tax deeds for taxes of the years 1856 and 1857 respectively.

He also showed title to the N. ½ of the S. W. ¼ by a tax deed for taxes of 1857. These were *prima facie* evidence of title.

But the plaintiffs below sought to invalidate these deeds by alleged errors or irregularities in the proceedings. These we will now examine in their order.

1. Deed for taxes of 1856 on N. W. ¼ of sec. 26.

The alleged error in this case is, that a computation shows that the state, county and township tax, $4.43, is one dollar too much.

This is conceded. But by an examination of the whole tax, we claim that the total tax is not too large.

It appeared that the district school tax for 1856, properly levied on this land, was $1.43. This leaves nothing for the mill tax, which the Supervisor was bound to levy. 1 *Comp. Laws*, § 2350.

The valuation of this land in 1856 was $1,000; and the mill tax on this would be $1. This, added to the amount called state, county and town taxes, would make the aggregate of that tax correct. And this mill tax can be found

nowhere else. But it is said that the mill tax should be placed in the column with school taxes. So the statute requires. — *Laws* 1853, § 36, *p.* 139.

But we claim that this is directory. It is a provision not for the protection of the tax payer, but for the convenience of the public officers. — 2 *Mich.* 498; 7 *Barb.* 139; 6 *McLean*, 418; 21 *Pick.* 64.

The tax payer is not prejudiced by an error in this respect. It was assumed by the Court below that he might be prejudiced by the mixing of one tax with others which were invalid; that he would wish to pay the valid ones and refuse to pay the other.

Our reply is that in such case the confusion of one void tax with others makes the whole void, and the tax payer is excused from paying any of them. — 13 *Mich.* 414; 4 *Id.* 157.

4. Deed for taxes of 1857 on N. W. ¼ of sec. 26.

Two errors seem to be claimed to exist in the taxes for this year.

*a.* The first is that the sum raised for township charges ($245.04) was too large.

The only evidence relied on as tending to show this, is, we suppose, the clerk's certificate of the amount voted at the annual township meeting, viz., $200.

This does not tend to show that this was the only money for township charges that the Supervisor was lawfully required to levy. It does not overthrow the statutory presumption of regularity. For it is perfectly consistent that other sums for township expenses might be regularly certified to the Supervisor.

And though no certificate but the one for $200 is found, yet on the papers found in the Supervisor's office there are distinct traces that other sums were certified. Thus the memorandum of $17 on the $200 certificate, and the paper signed by Oakes, the deceased Supervisor. It is true these are only memoranda made by the Supervisor in bringing

together the sums that he was to levy, but they imply the certificates which brought such sums to his attention. The $200, with the other sums named on these memoranda, it will be noticed, make $245.

*b.* But, *second,* it is said that, allowing this $245 to be correctly raised, the taxes on the two parcels of land for 1857 are in excess fifteen cents in one case, and six cents in the other.

To this we answer, first, that the only evidence that $245 was the full sum assessed as township charges is the warrant annexed to the collector's roll.

But this is not proper evidence of that fact. The designation of the disposition of the funds in the warrant is for the convenience of the collector. It is not controlling. The law makes the actual disposition. And no mistake or perversion of the lawful disposition in the warrant will change the legal right of state, county, town or school district.

It follows, therefore, that the plaintiff below was bound to go further. He was bound to give evidence sufficient to show either, first, that township charges to an amount sufficient to warrant the tax and which might have been legally certified to the Supervisor, did not, in fact, exist; or, second, that though such charges did exist, they were not, in fact, certified to the Supervisor.

The plaintiff below gave no such evidence.

But, on the contrary, the defendant gave in evidence the fact that there was the sum of $37.39 charges for a town line road which might have been certified, and which, if certified and levied, would satisfactorily account for the alleged discrepancy.

We were then entitled to the full benefit of the statutory presumption of regularity. The plaintiff below showed no facts absolutely inconsistent with regularity; he therefore failed to overthrow the presumption. — 2 *Mich.* 495; 4 *Id.* 158; 9 *Id.* 338; 13 *Id.* 415.

*c.* But, finally, even if we concede that there is an excess of fifteen cents or six cents, does this avoid the sale?

It is not an excess arising from the levy of an unauthorized tax; it is, if an excess at all, only an excess arising from an error in computation.

This is, we think, a material distinction. While the former avoids a tax, the latter should not.

We are aware that *Elwell v. Shaw,* 1 *Greenleaf,* 335, and *Huse v. Merriam,* 2 *Greenleaf,* 375, are usually cited as authority to a contrary doctrine. But compare 10 *Mass.* 105; 20 *Pick.* 424; 4 *Mich.* 140.

*Riley & Shipman,* for defendants in error.

1. There was no error in the admission of evidence, to show the true footing of values of real estate on the assessment roll.

2. The charge of the Court that if the assessment and sale of the premises in question was too much by 99 cents, the sale was therefore void, was correct. No law of the land authorizes the sale of property for any amount in excess of the tax it is legally called upon to bear.—4 *Mich.* 157; 1 *Mass.* 181; 10 *Id.* 115; 13 *Id.* 272; 15 *Id.* 144; 19 *Ohio,* 324; *Blackwell on tax titles, p.* 158—166.

3. The mill tax is required by law to be put in the column for school taxes. Its omission invalidates the sale. —4 *Mich.* 140; 5 *Mass.* 547; 21 *Pick.* 70; 10 *Vt.* 506; *Blackwell on tax titles, p.* 160—163; 19 *Ohio,* 324.

The admission by the Court below of evidence tending to show a practice amongst bidders during the years 1857 and 1858, claiming former tax titles on lands, to announce that it was their land, and upon such announcement, bids by other persons were withdrawn, was correct.—2 *Hammond,* 504; *Blackwell on tax titles,* 396.

5. The Court did not err in refusing to charge that if the Board of Supervisors adopted the Supervisor's incorrect footing they thereby made it their own, and that their

determination was final and could not be questioned in the suit.

Such a rule would dispense entirely with the necessity of any valuation being made by the Supervisors. The Board can determine nothing. Their province is to equalize the determinations of the Supervisors throughout the county.

CHRISTIANCY J.

This was an action of ejectment brought by defendants in error, deriving title by inheritance from the original patentee, against the plaintiff in error, who claimed part of the premises under two deeds from the Auditor General on sales made to him at the annual tax sales for 1857 and 1858 for the delinquent taxes of 1856 and 1857, and a part by a like deed on sale made to one Maria Platt (under whom he claimed) at the annual tax sales of 1858 for the delinquent taxes of 1857; all these tax deeds having been duly recorded in the office of the Register of Deeds for the county of St. Joseph (where the lands lie) more than two years before the commencement of this suit.

The plaintiffs below recovered a verdict and judgment in the Circuit Court. Numerous exceptions were taken, and twenty - nine errors are assigned to the rulings of the Circuit Judge, relating to the validity of the taxes and the regularity of the proceedings and sale. And without here specifying the particular objections relied upon by the plaintiffs below to the validity of the tax deeds and the regularity of the proceedings, it is sufficient here to say, that there was no evidence tending to show any defect or irregularities, which would not be cured by section 89 of the act of February 4, 1858 (*Sess. L. pp.* 185, 186) if the provisions of that section are valid as applied to these sales. This is the first question for our consideration; since, if this section is valid in its application to these sales, it disposes of the case, and none of the other questions presented by the exceptions can properly arise.

CASE *v.* DEAN ET AL.

We held in *Quinlon v. Rogers,* 12 *Mich.* 169, that this limitation of two years from the recording of the deed, was, as applied to the facts of that case, dependent upon the remedy provided by the same act for testing the validity of tax titles before a Circuit Court Commissioner; and this having been held unconstitutional in *Waldby v. Callendar,* 8 *Mich.* 430, that this limitation falls with it.

In the latter case, however, the question arose between the *original owner in possession* and the *claimant under the tax deed out of possession.* And it is insisted by the plaintiff in error (defendant below) that he was in the present case in possession under his tax deeds claiming title, during the two years prior to the institution of the suit; and that the real ground for holding the limitation void in *Quinlon v. Rogers,* was that the original owner being in possession and in the full enjoyment of all he could obtain by suit, the effect of the statute, if allowed to operate, would be to divest him of his property without trial or legal process, as held in *Groesbeck v. Seeley,* 13 *Mich.* 329, with respect to the attempted limitation of five years under the 135th section of this act (of 1858); that the defendant below being in possession, and the original owners out of possession, the case does not come within the principle of the decisions cited, and that the statute in this case may have its *legitimate effect* as a statute of *limitation,* without conflicting with the constitution or the decisions referred to.

The strength of this position, whatever it may be, must depend upon the fact whether the defendant below was then in possession during the period in question, or whether the evidence tended to show this. The only evidence upon the record upon which the plaintiff in error seeks to establish this fact is the following: After the plaintiffs below had proved their title under the patent, one of them being on the stand as a witness, testified "I was on the land about a year ago" (which would be in the latter part of 1864,) "and saw no evidence of cultivation or enclosure on the

same." "It being here proposed to show defendant in possession of the premises claiming title, it was thereupon admitted by the counsel for the defendant, that the defendant took possession of said premises in 1859, and had been in possession thereof ever since, claiming title and exercising acts of ownership over the same. And thereupon the plaintiffs rested their case."

Whether this admission under the circumstances, is to be treated as evidence in favor of the party making it, and as tending to show his possession for any period prior to the commencement of the suit, is a question upon which I have felt some doubt, and that doubt is not yet entirely removed. The plaintiffs were bound to prove either possession or claim of title by defendant when the suit was commenced. They gave no other proof upon this point except this admission. They therefore received and relied and acted upon the admission, as the record states they "thereupon rested their case." The general rule is certainly well settled that the whole of an admission must be taken together, though a jury are not bound to give equal weight to that which operates in favor of the party making it. And I was inclined to the opinion that if the plaintiffs were not satisfied with the admission as a whole, they should not have accepted and relied upon it, but should have resorted to their evidence upon the point. But my brethren take a different view of this question; and as the plaintiffs were about to introduce their evidence of the defendant's possession and claim of title, when this admission was made, they look upon the admission as apparently made only to obviate the necessity of such proof and to induce the plaintiffs to forego the introduction of the evidence. And as the plaintiffs were only bound to show defendant's possession or claim of title at the time the suit was commenced, the admission is only responsive to the plaintiffs' proposition (to introduce proof) so far as it relates to that period; and, so far as it related to possession prior to that time,

being no way responsive to the plaintiffs' proposition, nor in any sense an admission, it must thus far be treated as an attempt by the defendant to make evidence for himself. And to give it the effect of evidence of such prior possession would, under the circumstances of this case, operate as a trap upon the plaintiffs. There is much force in this view, and though it has not entirely removed my doubts upon the point, I yield my assent to it as applied to the particular facts of this case.

Defendant's possession for two years prior to the commencement of suit not being shown, the case must be considered, so far as it relates to the question of limitation, as falling within the principle of the decision in *Quinlon v. Rogers*. We must therefore consider the other questions presented by the bill of exceptions. In doing this it will not be necessary, and would lead to great prolixity, to consider each exception separately; though we shall endeavor to pass upon all the questions raised.

Testimony was admitted, against defendant's objection, tending to show that the true footings of the valuations of real and personal estate were different in amount from a statement found on a blank page of the assessment roll claimed to have been made, but not signed, by the Supervisor. That the correct footing of the valuation of real estate for the year 1856 was $5,230 less than shown by such statement of the Supervisor, and of the personal estate $2,245 more than appeared by such statement; and that the Board of Supervisors, in equalizing, had adopted and confirmed the valuations according to such erroneous footing of the Supervisors, and, through their chairman's certificate on the back of the roll, stated those amounts as the equalized and corrected valuations.

As to the tax of 1857, evidence was likewise admitted against objection, showing or tending to show that the correct footing of the valuations of real estate for the township was $300 more than was shown by a like unsigned

statement of the Supervisor on a blank leaf of the roll, and of the personal estate $10,380 more than shown by such unsigned statement, and that the order of the Board of Supervisors equalizing the valuation of the real estate of the township for the year, stated that they had equalized it by adding five per cent to $155,785, (which is less by $320 than the correct footing as shown by witnesses, and $20 less than the footing of the Supervisor); and that they ordered the valuation of the personal estate to stand confirmed at $31,590, which is the amount erroneously shown by the supposed footing of the Supervisor.

This evidence seems to have been offered for the purpose of showing that the Board had adopted a false valuation, and therefore proceeded on a false basis in equalizing the value of the real estate and in apportioning the amount of state and county taxes to the township. This seems to have been the view entertained by the Court.

Proof by witnesses of what were the true footings of the rolls would seem to be quite immaterial in itself as the rolls were in evidence, and it was competent for the jury to foot them for themselves, and to avail themselves of any material fact which might appear upon them.

We see nothing in the statute, or in the nature of the services to be performed by the Supervisor, making it his duty to foot up and state the aggregate of the valuations of real and personal estate, as a pre-requisite to the equalization by the Board. In this respect the charge of the Court we think was erroneous. Their power of equalization is confined to the real estate. The valuations of the personal estate must remain as fixed by the Supervisor. The only object to be accomplished by the equalization, is to produce relative equality among the several townships in the county. And this can be done as well (if not better) by comparing, in a considerable number of instances, separate pieces of real estate of similar qualities, area and value in the several townships, as by taking the aggregate in

each. But the Board have full and complete jurisdiction (not subject to review), over the whole subject of this equalization, and may adopt their own means of reaching the result. And when they have fixed the amount at which the real estate in a township is to be valued for the year, it is conclusive, and cannot be invalidated by showing that they had adopted an erroneous footing or aggregate, of the valuations returned by the Supervisor. The charge of the Court in this respect was erroneous.

It is true that, when the Board in equalizing, make any alteration in the aggregate valuation of real estate, they are required to state upon their records the amount added to or deducted from the valuation in each township (*Laws of* 1853, *p.* 137, § 27); and as appears by the certificate required by the 29th section to be made by the chairman, this is to be done by adding to or deducting from the Supervisors' aggregate valuation, a certain percentage. But whatever method they may adopt for fixing the aggregate valuation to be charged to the township, this is easily expressed in the form of a percentage.

The chairman is (by the 29th section) also required to certify that the Board "have determined the aggregate value of the taxable real and personal property in the township to be" a certain stated amount; and this involves the necessity of footing the personal estate as valued by the Supervisor, and of the real estate at the amount determined by the equalization.

The Board are also, by the 31st section, to apportion the amount of state and county taxes among the several townships in proportion to the amount of taxable property therein as equalized by the Board; and, by section 32, such amounts are to be charged to the respective townships. And in this view, as affecting the amounts to be charged and apportioned to the respective townships, an erroneous footing of the valuations of personal property as appraised by the Supervisor, or an estimate of the

aggregate valuation of the real estate, different from that at which it was *equalized*, might become material by increasing the quota of tax charged to the township, and consequently the amount to be paid by each tax payer. But any error of this kind which should not have the effect thus to *increase* the tax, and especially an error which should reduce it below its due proportion, can constitute no injury or grievance to the tax payer and cannot be set up by him as a ground for invalidating a sale of his property for the tax. In this respect the charge given by the Court at the request of plaintiffs below was erroneous, as it made the adoption of an erroneous aggregate valuation by the Board, as a basis for the apportionment to the township, vitiate the tax, without reference to the question, whether it had increased or diminished the taxes upon the plaintiff's property. In a subsequent portion of the charge, however, it was declared that such errors would vitiate the tax rolls, "if the jury should find such errors to have existed to an extent to affect the substantial rights of the tax payers injuriously." "By this" said the Judge, "I do not mean that you should find slight fractions, or small errors of 5 or 10 cents (meaning in the aggregate sum apportioned to the township) vitiates the tax roll, provided the general basis is correct, and ordinary care used in making the arithmetical calculations." And in that portion of his charge in reference to the statute presumption in favor of the validity of the tax deeds, he told the jury that, to overcome the presumption, "the plaintiffs must show some substantial error affecting injuriously the owner of the land." These portions of his charge might have cured the error last mentioned, if he had not erroneously refused to charge as requested by the defendant, that "the statute did not require the Supervisor to make any footing as aggregates of the valuations of real estate upon his roll before it was submitted to the Board for equalization and if he did so and made it incorrectly, and the Board

adopted such footing, they thereby made it their own, and their determination was final, and cannot be questioned in this suit; and that although the Supervisors may have made an erroneous footing of the valuation of the personal property in the township, yet if this error in the footing made the tax to be borne by the parcels in question lighter than it would otherwise have been, then these plaintiffs could not complain; and it would not invalidate the taxes in question." These refusals, in connection with the charge as given were calculated to confuse the minds of the jury and to induce them to believe that if the strict requirements of the law had been violated, in the adoption by the Board of an erroneous footing, in the apportionment of the taxes it would vitiate the taxes and render the title void at all events.

But the evidence of these erroneous footings and their adoption by the Board, so far from tending to show that the taxes had been thereby increased, actually tended to show they had been diminished by this error, below their just proportion. We have already said that, as to the real estate, the determination of the Board, as to the amount to be charged to the township was final, whether the data upon which they determined the amount were correct or not. The question therefore whether the · taxes were increased by the erroneous footing, must be confined to the personal estate. If, in footing up the personal valuations, they made the amount larger than it really was, as shown by a correct footing, then the aggregate sum charged to the township and to be raised upon all the taxable real and personal estate, would to that extent be too large, and the tax on these lands, in that proportion, unduly increased; but if, by any error, the amount of the personal estate adopted was too small, then, the amount of tax apportioned to the township, and consequently the proportion of it assessed upon these lands, would be, by so much, less than it ought, in justice to the other townships, to have

been. Now, the evidence introduced by the plaintiffs tended to show that the Board adopted an estimate of the aggregate of the personal property for 1856, which was too low by $2,245, and for the year 1857 too low by $10,380. These errors, if they existed, must have lessened the taxes charged to the township, as well as the taxes upon these lands.

The plaintiffs below were allowed to prove under objection, that at the tax sales for 1857 and 1858 (the years in which the lands in question were sold), when a tract of land was cried for sale, bidders would frequently announce, "that is my land"; and that, upon such announcement, bids were frequently withdrawn, and the party thus claiming it, by tax title or otherwise, would be allowed to take it at the amount for which it was offered, the tax, interest and charges; but that sometimes "bidders would get spunky and bid down." Plaintiffs were also allowed to show, that without any express words, there was a kind of tacit understanding among old bidders, who had attended the sales for years, not to bid against each other, and to look upon new bidders as outsiders, with whom they were more inclined to compete, and that the defendant was not, at the sales in question, looked upon entirely as a new bidder, having bid on lands once or twice before, though he was not looked upon as an old bidder. And that the old bidders sometimes were allowed to withdraw their bids in favor of each other after part of the land had been struck off, and the party in whose favor it was withdrawn would be allowed to take the whole land for the amount due upon it. This evidence was not offered to show, and it did not fairly tend to show, that the defendant below or Mrs. Platt, through whose purchase he derived title to one of the lots, was privy to any arrangement or understanding of this kind, or assented to it; nor did it appear that any bid had thus been withdrawn upon these lands. This evidence was allowed to go

to the jury, the Court charging, at the request of the plaintiffs, that "all combination or collusion between bidders, at a sale of lands for delinquent taxes, which has a tendency to prevent free and open competition, is fraudulent in law; and, if any such combination or collusion existed at the sales of 1857 and 1858, which had a tendency to prevent free and open bidding on the lands in question, then such sales were void; and all the evidence on that point might be taken into consideration, in determining such combination or collusion; and if, but for such combination, a lesser quantity of land would have sufficed to raise the tax, interest and charges in the case in question, then the sale was illegal and the deeds void." The Court refused to charge that "even if the jury should find that there were parties in attendance as bidders, who, by agreement, withdrew their bids in each others favor, that would not affect the sales in question, unless the person bidding upon the parcels in suit was privy to such agreement; and the burden of showing such privity is upon the plaintiffs." This charge and refusal taken together assumed that such an understanding or arrangement among other bidders, would be fraudulent, and vitiate the sales, not only as to the parties privy to it, but as to the defendant who was ignorant of it, and purchased in good faith without reference to it, if a jury should be of the opinion, that but for such understanding among other bidders, others might have bid upon the lands, or for any other reason a less quantity of the land might have been sold.

We do not understand this to be the law; and, under such a rule, no one would be safe in bidding at tax sales, which it is the policy of the law to encourage. He was not to be affected by any such combination or understanding among others to which he was not a party, and of which he was ignorant.

Under the law of 1853, sec. 36 (until the amendment of 1859, Sess. L. p. 37), the state, county and township

taxes were blended together in a single column, with nothing on the face of the roll to distinguish the respective amounts — the school, library and school house taxes in another column, and the highway taxes in another; but the warrant for collection was required to "specify particularly the several amounts and purposes for which said taxes are to. be paid into the township and county treasuries respectively," and it was only by this, that the several amounts of state, county and township taxes could be distinguished, and this only in the aggregate, and not in individual cases. The same was true of the school, library and school house taxes.

The roll in the present case for 1856, stated the taxes on one parcel of these lands as follows:

| STATE, COUNTY AND TOWNSHIP. | HIGHWAY. | SCHOOL. | TOTAL. |
|---|---|---|---|
| $4 43 | $1 56 | $1 42 | $7 41 |

This state, county and township tax is admitted to be one dollar more than it should have been, according to the valuation and the amount to be raised; and some of the testimony tended to show it too much by $1.04. The school tax of $1.42 was proved to have been the due proportion which the valuation of this tract ought to pay, of a sum of twenty-two dollars, district school tax to be raised; so that the one mill tax, required to be assessed for township, library and schools, by section 2350 Comp. Laws, was not placed in the column of school taxes, and in fact, did not appear by the roll to have been assessed at all. This tract was valued on the roll at $1,000, and one mill tax on this would amount to one dollar. And from these facts alone it was urged in the Court below, and is insisted here, that the jury were authorized to find that the Supervisor had, in fact, assessed the mill tax, and

included it in the column of state, county and township taxes. But we think the jury were not at liberty to find that the Supervisor had cured one violation of the law by committing another. There was no evidence tending to show any intention or attempt to assess the mill tax at all, either upon this or any other land in the township; nor whether a similar excess existed in the column of state, county and township tax upon the other or any of the other lands upon the roll; and we do not think the statute, requiring it to be placed in the column of school taxes, is so far directory as to permit the amount to be blended with that of state, county and township taxes; and especially where nothing appears upon the roll to indicate the intention thus to include them. This provision was, we think, intended, among other purposes, for the benefit of the tax payer, to enable him to distinguish, to this extent, the different species of taxes he should be called upon to pay and their respective amounts.

We think the Court took the correct view of this provision.

### TAXES OF 1857.

The amount of township taxes for this year, as appeared
  by the warrant attached to the roll, was ............. $245 04
And other amounts to be paid to various persons ........ 150 00

  Total ........................................ $395 04

The certificate of the township clerk in reference to the amount of township taxes to be raised, was given in evidence, stating that two hundred dollars had been voted for township purposes for the year at the annual township meeting. No other certificate to the Supervisor authorizing any other township tax was shown, nor was any evidence given showing the former existence and loss of any other certificate; nor did it appear from the records of the township, kept by the clerk and introduced in evidence,

that any other sum had been ordered to be raised. But at the foot of the $200 certificate, and below the signature, was a memorandum in pencil as follows: "voted by the Board, $17." The Supervisor was dead; and a paper from his office was offered in evidence, of which the following is a copy:

"Damages by reason of laying out highways amount to
    $150, for 1857, to be paid as follows, to wit, (naming
    persons and amounts and footing up)................. $150 00
Jurors' and Commissioners' fees .......................... 28 00
                                                               
   "As certified by town clerk........................ $178 00
    (Signed)                              "D. OAKES,
                                                             *Supervisor.*"

This $28 with the $17 on the pencil memorandum making $45, which with the $200 certificate would make $245 (within four cents of the amount stated as township tax in the warrant attached to the roll).

But, allowing this $45 to be added to the $200 as township tax, the taxes in the column of state, county and township taxes on one parcel of this land, it is admitted, were still too much by fifteen cents, and, on the other, too much by six cents, according to the valuations and the amount to be raised.

The Court charged the jury that, if they should find this excess of taxation, the sale was void, and the purchaser could acquire no title under it. The like charge was given as to the excess of one dollar claimed to exist in the taxes of 1856, already noticed.

We think this charge was correct. The authority to tax is fixed by the statute, and must be strictly pursued. The Supervisor has no authority to tax at his own discretion, but can only assess such taxes as are properly certified to him for that purpose and such as the law makes it his own immediate duty to assess without such certificate. Any material excess, therefore, in the State, county or township tax, all of which are blended together in one column

and indistinguishable, will render all the taxes in that column void; and any sale for taxes, of which these form a part, must also be void. And, though the excess in this case is small, we cannot, without departing from the almost uniform current of authorities, disregard it. If the maxim, "*de minimis non curat lex,*" can have any application to an excess of this kind, it must be applied with great caution. Taxes upon the several individuals or the several pieces of real estate in a township, are generally imposed in small sums, which, however, in the aggregate, may amount to a very large sum.

An excess of six cents, in a tax of one hundred dollars, might perhaps be disregarded with greater propriety than if the tax was but one dollar, or (as in this case) $5.49 in one instance, and $6.73 in the other. But the question is one of the jurisdiction of the Supervisor to assess the tax and of the excess of a statute authority in assessing it; and while it may be safe to say that an excess of a single cent would be too trivial for notice, we do not think we are authorized by the authorities to disregard the excess shown here.

There being still this excess in the taxes of 1857, after allowing the item of $17 in the pencil memorandum and the $28 stated in the memorandum signed "D. Oakes, Supervisor," the point, whether these memoranda were admissible, does not arise unless the item of $37.39 for expenses of laying out a highway on the township line, to be presently noticed, can be presumed to have been duly certified by the clerk to the Supervisor, for taxation in addition to the certificate of $200.

But it is insisted by the plaintiff in error, that, inasmuch as the tax deeds were, under the statute, *prima facie* evidence of the regularity of all the proceedings and of title in the purchaser, it was not sufficient for the plaintiffs to show the certificate of the township clerk of $200 voted for township purposes, but that other sums

may have been properly certified; and that the plaintiffs were therefore bound to go further, and show, either that township charges sufficient to amount to the tax, did not exist, or, if they existed that they were not in fact certified. And the plaintiff in error, in this connection, relies upon the facts, 1st. That the excess in the township taxes for the year appears only by the warrant attached to the roll, designating how and for what purpose the sums raised are to be paid over — insisting that this is not the proper evidence of that fact; that it is only for the convenience of the collector, and not, therefore, conclusive; as the law makes the actual disposition, and no mistake or perversion of the lawful disposition in the warrant can change this legal disposition. And, 2d. He relies upon the fact shown by him from the township records, that the amount of $37.39 of expense to the township had been incurred in 1857 as the proportion of this township in laying out a highway on the township line — that these expenses were entered on the township records under the date of November 28th, 1857, and after several other entries on the same page headed with that date; though it was shown by the highway book that the highway was laid out in May, 1857. And this amount, it was shown, would, if duly apportioned, amount to a fraction over fifteen cents upon one piece of this land, and a fraction over six cents as to the other. And it is claimed that, until the contrary is shown by proof, this must, under the presumption raised by the statute, be presumed to have been certified by the clerk to the Supervisor.

We do not think the position of the plaintiff in error can be maintained upon either of these grounds. We adhere to the rules in reference to the statute presumption laid down in *Lacey v. Davis*, 4 *Mich.* 140, that the evidence, to overcome the statute presumption of regularity, must be such as will exclude any reasonable presumption of regularity; and in *Amberg v. Rogers*, 9 *Mich.* 332, that,

till a reasonable presumption to the contrary has been raised by proof, we are to presume that everything has been done which the statute authorized to be done, to render the sale valid; and in *Wright v. Dunham,* 13 *Mich.* 414, that, to overcome the statute presumption, it is not enough to show facts from which an inference of irregularity may be drawn, if they are not inconsistent with the existence of other facts which would establish the correctness of the proceedings — as this rule was applied to the facts of that case.

But we do not think the rule as stated and applied in any of these cases will sustain the position of the plaintiff in error on either of the grounds urged or upon any other ground.

First, as to the objection that the excess of taxation for 1857 only appeared by the warrant attached to the roll, etc., it is true that as to the excess of $45.04 township tax above the $200 certified by the clerk, this only appeared by the warrant; but even admitting the correctness of the $45.04, the excess in the collective amount of state, county and township taxes already mentioned of 15 cents as to one, and six cents as to the other parcel, still existed. The excess, therefore, upon this theory of the case, must have been in the state or county tax or both; and the amount to be raised for these purposes was proved by the certificate of the clerk of the Board of Supervisors. Again, though it may be true, that an erroneous statement in the warrant of the amounts to be paid over for the particular purposes stated, might not invalidate the taxes; yet, as the statute (*sec.* 36, *act.* 1853) requires the warrant to "specify the' several amounts and purposes for which said taxes are to be paid into the township and county treasuries respectively"; this specification in the warrant, must be considered as good *prima facie* evidence at least, of the *amounts assessed by the Supervisor* for the purposes indicated. And, as to this fact (the amount *assessed* by the *Supervisor*) it would seem

to be the primary evidence. The primary evidence of the amount *authorized* to be raised, was, as to state and county taxes, the certificate from the Board of Supervisors, and, as to the township tax, the certificate of the township clerk which was produced, and no other was shown to have existed; nor was any proper foundation laid for secondary evidence.

And as to the item of $37.39, above mentioned, it is sufficient to say, that if the $45 mentioned in the pencil memorandum and that of D. Oakes, Supervisor, was included, as claimed by plaintiff in error, then this item of $37.39 could not be included without contradicting the warrant, which we have already said was *prima facie* evidence at least of the amount actually assessed as township taxes by the Supervisor; and the statute presumption of regularity we think was not intended to overcome such *prima facie* evidence of irregularity. In other words, the evidence furnished by the warrant (though held to be only *prima facie*) cannot, in the absence of proof, be considered consistent with the further fact claimed, that the amount of taxes actually assessed by the Supervisor for township purposes was greater by $37.39 than stated in the warrant. But beyond this, and as a broader ground of objection to the position of the plaintiff in error, the statute ( *sec.* 26 *of the act of* 1853, *Comp. L.* § 807 ) made it the duty of the township clerk, on or before the second Monday of October, to deliver to the Supervisor "*a statement* of money to be raised therein for township purposes, and the amount voted for the maintenance and support of common schools and the township library, stating the amount of each as well as the *aggregate amount.*"

This would seem to contemplate but a single statement or certificate for the whole of the taxes for these purposes for the year; and the proof of one certificate of the clerk stating only the amount of two hundred dollars to be raised for township purposes, can hardly be said, in the

absence of all proof, to be consistent with the idea that another certificate had been made stating a different or a further amount; and, must be held to raise a strong presumption at least, against such further or other certificate. But again, it is fair to presume from the date of the entry in the township record, that this amount of $37.39 had not been audited and allowed as a township charge until the 28th day of November; and the clerk's certificate or statement was required to be made on or before the second Monday of October. And, by the 36th section, the corrected assessment roll, with the taxes for the year annexed, was required to be delivered to the township treasurer on or before the 15th day of November; and "before the Supervisor shall deliver such assessment roll and tax list to the township treasurer, he shall carefully foot up the several taxes therein levied, and shall give to the township clerk of his township a statement thereof; and such township clerk shall immediately charge the amount of such taxes to the township treasurer."

Though it is possible that these provisions, as to the time within which these several acts are required to be done, might be treated as so far directory, that such acts or some of them might be good as to the public, though done after that day; yet the officers would be liable to a prosecution for a misdemeanor for the neglect. And we do not think the statute presumption of regularity is to be carried to the extent of presuming such neglect, when it involves a criminal offense, and the further presumption that the duty was afterwards performed. If these duties could have been performed after the time fixed, a certificate would still be required and the presumption against such certificate arising from the proof of the $200 certificate still remains.

We think the Court correctly charged the jury that, "although the holder of the tax title may repose upon his deed, until the opposite party introduces such evidence as,

in the absence of all counter testimony, will afford reasonable ground for presuming the proceedings anterior to the deed to be irregular and insufficient to sustain the title; yet when this is shown, the burden of proof is thrown upon the holder of the tax title, and the common law rule so far restored." And we think there was no error in refusing to charge as requested by defendant below, that "if the jury should find the charges for laying out the highway in question (the $37.39), properly to be borne by this township, were assessed upon the roll of 1857, the jury might rightfully presume that the proper steps were taken to authorize the Supervisor to assess it." We see no evidence from which they could find that this was assessed, and no ground for presuming that, if assessed by the Supervisor, the proceedings were regular or authorized by law.

Nor do we think the Court erred, under the facts in this case, in refusing to charge, as requested "that (to invalidate the deeds) it was not sufficient for the plaintiffs to prove facts from which an inference of irregularity may be drawn if such facts are consistent with the existence of other facts which would make the proceedings regular." There was, we think, no state of facts rendering this special branch of the general rule applicable to the case. All the case required was the general rule, which, in answer to this request, he again repeated, that, "the deeds from the Auditor General were *prima facie* evidence of title in the defendant; and all presumption of regularity in all the proceedings up to and including the sales in question were in favor of the defendant; and such presumptions in favor of the sufficiency of defendant's title must prevail until the plaintiffs show facts inconsistent with such presumption." He further correctly charged in reference to this point that to overcome this presumption, plaintiffs must show some substantial error affecting injuriously the owner of the land, in the raising, return, assessment and collection by sale for the taxes levied on the land.

CASE *v.* DEAN ET AL.

But there is one point nearly allied to that of the excess of taxation in which we think the Court erred. The taxes of one parcel appeared upon the roll as follows:

"State, county and township taxes, $3.74; school taxes, $1.75; total taxes, $5.59." Here was an obvious excess of ten cents in the footing of the items which were set forth .in the same line on the face of the roll. These items were. as readily seen as the total, and enough appeared on the face of the roll to show that the total was intended to be the sum of these items. This, being a mere error in footing, was corrected by the county Treasurer, and this error of ten cents not included in the sum for which the land was sold. But the Court, at the request of the plaintiffs, charged that it was "the duty of the Supervisor to enter the aggregate of the state, county, township, school and highway taxes on their rolls; and if it should appear that $5.59 was entered as the aggregate of the taxes on this parcel, the law was not complied with, if the jury should find from the evidence that the aggregate was $5.49"; thus clearly intending that the sale would in such event be void. It is true the law was not *literally* complied with, but the jury should have been told that an obvious error thus made and thus corrected, and which could not injure the plaintiffs, should be disregarded; as the spirit and object of the law were complied with. The charge as given was inconsistent with his charge upon another point which we have already said was correct, that to invalidate the deed, an error must be shown affecting injuriously the owner of the land.

The charge in reference to the mode in which the lands were offered for sale by the Treasurer, was clearly in favor of the defendant, and virtually declared that the mode adopted, as shown by the evidence, was correct. It need not, therefore, be noticed here.

For the errors above pointed out the judgment must be reversed, with costs and a new trial awarded.

CAMPBELL J.

I concur in the various results arrived at by my brother Christiancy; and I also agree with all that he has laid down in his opinion, except as it allows an inference that the question of possession may have a bearing upon the validity and operation of the statute giving conclusive force to certain deeds. The case of *Quinlon v. Rogers* was not decided on any such basis, but held the law absolutely invalid, no such point being regarded. And I think the full effect of that decision should be allowed, as the statute in very plain terms purports to act on rights and not on remedies, and to give to irregular proceedings to divest estates the same force as if they were in every sense due process of law. Such an effect it is universally conceded cannot be reconciled with constitutional restrictions in favor of private rights, and any other interpretation fails to conform to the manifest design appearing in the law.

COOLEY J. concurred with CAMPBELL J.

MARTIN CH. J. did not sit.