In the matter of FRANK BURGER.

*Circuit court commissioners—Habeas corpus.*

Circuit court commissioners cannot review the judicial action of any court in holding persons convicted of crime, or issue writs of *habeas corpus* upon grounds involving judicial action.

The mere misnomer of the place of confinement is no reason for invalidating the sentence and discharging a prisoner where there is no doubt about the place meant.

A prisoner under sentence is not of right entitled to a discharge for formal defects in the papers on which he is convicted, where they can be remedied on application to the proper court or officer.

Whether a circuit judge cannot hold court for hearings on *habeas corpus* at other times than when the circuit court for the county is in session—*Q.*

CERTIORARI to Frank D. M. Davis, circuit court commissioner for Ionia county. Submitted June 19. Writ dismissed June 21.

*Wm. L. Strickland* and *Mitchel & Pratt* for petitioner.

Attorney General *Otto Kirchner* for the People.

COOLEY, J. The petitioner being confined in the State House of Correction and Reformatory at Ionia applied to the circuit court commissioner for the county of Ionia for a writ of *habeas corpus*, and for a discharge under it. The commissioner issued the writ, but on a hearing refused a discharge. His proceedings are now brought up by the petitioner for review.

The confinement of the petitioner was under a conviction in the circuit court for the county of Ionia for larceny. The grounds on which he demanded his discharge may be stated briefly as follows:

1. That no warrant or other process was issued by the circuit court for carrying into execution its judgments.

2. That the judgment of the court was that the petitioner be imprisoned in "The House of Correction at Ionia," whereas the only place in which such convicts could be imprisoned at Ionia is the "State House of Correction and Reformatory at Ionia."

3. That the papers which accompanied the prisoner when he was sent up to the House of Correction, were not in full compliance with the provisions of § 57 of Act 176, Public Acts of 1877 (p. 185), which requires the court imposing a sentence to furnish the officer receiving the prisoner in execution thereof with a copy of the information, etc., and certain other papers showing the conviction and the grounds of it.

The statement of these positions makes it evident that the commissioner was asked to sit in judgment upon the proceedings of the circuit court for the county of Ionia, and to annul in a collateral proceeding a formal sentence of that court, and the steps taken in execution thereof. As the circuit courts are the highest courts of general jurisdiction in the State, the power here invoked is a most extraordinary one, and it becomes of the highest importance in the administration of criminal law in this State to know whether any such power pertains to the commissioner's office.

Circuit court commissioners are chosen under the provision of the Constitution empowering the electors of each county to elect officers who may be vested with judicial powers 'not exceeding those of a circuit judge at chambers.' Art. 6, § 16. But as the Constitution had already conferred the judicial power of the State upon certain courts—Art. 6, § 1—this section, as we have frequently had occasion to declare, permitted giving to the commissioners judicial powers in a very subordinate sense only; powers of the sort that are usually denominated *quasi* judicial; such as are appropriate for the judge's chambers rather than for the court. It is not competent for the Legislature to empower them to

try titles to property; *Waldby v. Callendar*, 8 Mich., 430; *Case v. Dean*, 16 Mich., 12; or to decide upon the right to the custody of children; *Rowe v. Rowe*, 28 Mich., 353; or in short, to exercise the usual powers of courts. There are a few apparent exceptions which are alluded to and the reasons mentioned in the case last cited, but they are unimportant here. In short, the circuit court commissioner is a subordinate and assistant to the circuit court rather than an independent judicial officer.

The proposition that such an officer may sit in review of the proceedings of the court itself and annul its judgments and discharge its convicts if by some error of its clerk a paper is not properly certified, or a person is misnamed, or if the evidence that satisfied the judge does not satisfy his subordinate, is one too amazing to be seriously dealt with. If sanctioned and acted upon, it would be destructive of all judicial subordination, and the authority of the commissioner in overhauling the decisions and judgments of the court whose officer, assistant and subordinate he is, would practically be limited only by his discretion.

To avoid misapprehension, however, it is deemed proper to add in this place that the want of jurisdiction in circuit court commissioners to hear applications for discharge on *habeas corpus* is not limited to cases where the imprisonment is under the order or sentence of the circuit court or of some other court of record, but they are equally powerless to act in other cases where the prisoner is held under the order, sentence or process of a court of any grade. In other words, the determination whether the judicial function has or has not been properly and legally exercised in any particular case, is necessarily the exercise of judicial power, and therefore jurisdiction in respect to it cannot be conferred on an officer elected merely for ministerial and chamber duties.

No doubt the statute, Comp. L. ch. 223, empowers circuit court commissioners to issue writs of *habeas corpus;* but this authority is limited and restrained by

the Constitution, and cannot extend to any case where a consideration and decision of the question raised would be an exercise of the judicial power. The cases are therefore few in which the commissioner would be empowered to act at all. For a commissioner to assume to pass upon the validity of the process, order, judgment or sentence of any court of the State would be sheer usurpation, and if tolerated at all, would make the commissioner of the county in which any state place of confinement was situated an appellate tribunal in respect to all the courts of the State empowered to sentence prisoners to that place. In effect such commissioner would become a state judicial officer of high authority, and whose errors, when they resulted in the discharge of the prisoner, would generally be without effectual remedy.

The commissioner in this case was entirely right in his refusal to discharge the petitioner, and the writ sued out to review his proceedings will be dismissed.

We do not go into an examination of the sentence and of the papers on which the petitioner is held, because it is entirely unnecessary. It may not be improper to say, however, that no mere misnaming of the prison could be any reason for a discharge when it was sufficiently designated to preclude any mistake. Also that process in execution of the sentences to imprisonment by the circuit courts of this State has never been required; a certified copy of the sentence itself being the substitute. Why any more was required by the statute of 1877 we need not speculate: it is much to be feared that that act may raise difficulties without accomplishing any good purpose. If, however, the discharge of a prisoner under sentence is demanded on the ground of formal defects in the papers, we do not understand that he is entitled to it as of right when the defect is one that can be remedied on application to the proper court or officer.

What has been said in this case is not intended to call in question the authority of the circuit judge to hold a court for hearings on *habeas corpus* at other times than when the circuit court for the county is in session. *Buddington's Case*, 29 Mich., 472.

The other Justices concurred.