MULHERN *v.* KENT CIRCUIT JUDGE.

1. DISCOVERY—STATUTES—INTERPRETATION.·
    The proceedings under a statute authorizing a preliminary examination of the plaintiff or defendant in an action at law, for the purpose of affording a remedy to the adverse party analogous to that afforded in equity by a bill of discovery, are limited, in the absence of anything in the act itself indicating a contrary intent, by the rules applicable to a discovery in equity.

2. SAME—DISCRIMINATION BETWEEN SUITORS—EVIDENCE.
    No unconstitutional discrimination between suitors is made by a statute permitting the deposition of a party to an action at law, taken at the instance of the adverse party, to be introduced on the trial at the option of the party taking the same.

3. SAME—CIRCUIT COURT COMMISSIONERS—CONSTITUTIONAL LAW.
    The judicial power to determine what evidence is relevant to an issue at law, sought to be conferred upon circuit· court commissioners by Act No. 181, Pub. Acts 1895, authorizing the examination of a plaintiff or defendant before a commissioner, at the instance of the adverse party, as to facts "relevant to the issues involved," and giving testimony so taken the force of evidence, without providing for a review by the court of the rulings made on the examination, is in excess of their constitutional powers.

4. SAME.
    The unconstitutionality of such provision renders the entire act invalid, as it is not clear that the legislature would have permitted rulings by the commissioner had it known that he did not possess the necessary judicial qualifications for a final determination of the questions involved.

*Mandamus* by Hattie Mulhern to compel William E. Grove, circuit judge of Kent county, to vacate an order declaring void certain proceedings under Act No. 181, Pub. Acts 1895, to compel an examination before a circuit court commissioner of the defendant in a suit for slander instituted by relator.    Submitted November 24, 1896.    Denied February 2, 1897.

*Maher & Salsbury*, for relator.

*Butterfield & Keeney*, for respondent.

HOOKER, J.    The relator, having brought an action for slander against one Dr. Jackson, before filing a declaration therein, made an affidavit that she verily believed:

"That it is necessary that the testimony and deposition of said defendant be taken in pursuance of the provisions of Act No. 181 of the Public Acts of the legislature of the State of Michigan of the year 1895, to enable this deponent to plead and declare in respect to the meaning of the various statements contained in said publication, of which Exhibit A, hereto annexed, is a copy, and in respect to the matters in which it is claimed that the said plaintiff violated any of the by-laws, rules, regulations, or discipline of the said Fountain Street Baptist Church."

This affidavit was made in reliance upon Act No. 181, Pub. Acts 1895, and a summons was taken from one McGill, a circuit court commissioner, requiring the defendant to appear before said commissioner for examination.    Before the return day, these proceedings were stayed by an order made by Judge Grove of the Kent county circuit court, pending a motion to set aside such proceedings. This motion was heard on April 20, 1896, by Judge Adsit, of the same circuit, and, the matter being taken under advisement by him, has never been decided, nor has such stay been set aside or terminated by any action of the circuit court.    On June 26, 1896, the plaintiff filed her declaration, and on September 2, 1896, she began another

111 MICH.—34.

proceeding before said commissioner, basing it upon an affidavit showing that said cause was at issue, and stating that she desired to take the deposition of the defendant, under the provisions of said act. Summons was issued, but the proceeding was declared void upon a motion before Judge Grove, and a *mandamus* is asked to require the vacation of such order.

Counsel for the defendant contend:

1. That the law is unconstitutional for the reason that it discriminates between suitors, and because it attempts to confer upon the judge at chambers and circuit court commissioners judicial powers beyond those which, under the Constitution, they may lawfully exercise.

2. That, if the act is constitutional, its title limits relief to discovery, which has a well-defined meaning, and is limited to such discovery as under the practice in equity might have been allowed, which excludes the right to examine the defendant in this proceeding.

3. That this proceeding was begun in violation of a stay of proceedings issued in a previous proceeding of the same kind, which is still pending.

4. That no motion to vacate the order was ever made.

This act provides that—

"In all proceedings and actions * * * the testimony of a party * * * may be taken by deposition at the instance of the adverse party, at any time after the commencement thereof, and before judgment, * * * before a judge at chambers or a circuit court commissioner. * * * The attendance of the party to be examined may be compelled upon subpœna, * * * and such examination shall be subject to the same rules as that of any other witness, but he shall not be compelled to disclose anything not relevant to the controversy. If * * * taken before issue joined on the part of the plaintiff, the notice of taking the same shall be accompanied by an affidavit * * * stating the original nature and object of the action; that discovery is sought to enable the party to plead, and the points upon which such discovery is desired; and such examination shall be limited to the discovery of the facts relevant to the points so stated, unless the court or presiding judge,

or such circuit court commissioner, * * * shall, before the examination is begun, by order, further limit the subjects. * * * Such examination shall not preclude the right to another examination after issue joined, upon all the issues in the case, and the party examining shall, in all cases, be allowed to examine upon oral interrogatories. * * * In any examination * * * the judge or commissioner * * * shall have power * * * to compel the party examined to answer all questions relevant to the issues involved, and also to compel the production, by the party examined, of books and papers relevant and pertinent to the issues, and may enforce such answers, and the production of such books and papers, by contempt proceedings. The depositions taken * * * may, at the option of the party taking the same, be used as evidence at the trial. * * * If any party * * * neglect or refuse to appear and testify, or to produce any books and papers lawfully required, * * * he may be punished as for a contempt, and his pleadings stricken out, and judgment given against him as upon default or failure to plead."

If this act were to be given the broad construction· for which counsel for the relator contend, a party plaintiff or defendant would have the right to examine his adversary, both before and after issue joined, upon any and every subject relevant to the case. This is an extension of the rule in equity, which required a decree of court, authorizing discovery, and settling the interrogatories to be answered, or subjects upon which the discovery was to be had. And while many of the States—especially the code States—have statutes permitting discovery in proceedings at law, most of them require an order of court and the settling of interrogatories; and in construing such statutes the trend of judicial opinion seems to be towards a denial of an unlimited right of examination, and confining it to such subjects as will enable the party requiring it to make out his own case. Under the common-law procedure act of England, which gives the right to deliver interrogatories to the opposite party as to any matter on which discovery may be sought, it was held in an opinion by Lord Campbell:

"That the section * * * is intended to apply to cases only where the matters inquired into would be evidence in the cause, and that it was not intended thereby to give one party the power of asking the other how he intends to shape his case. * * * We were much pressed with the recent case of *Flitcroft* v. *Fletcher*, 11 Exch. 543. If the court there meant to decide that the defendant may always ask the plaintiff to declare on oath how he means to shape his case, we are not prepared to assent to it; and we should not feel ourselves bound, by a decision of this nature, to the same extent as where a decision can be reviewed on error, even if the case were precisely in point." *Edwards* v. *Wakefield*, 6 El. & Bl. 468.

And in *Pye* v. *Butterfield*, 5 Best & S. 837, it is said:

"But I rest my judgment on the ground that, in suits pending in the courts of common law, the exercise of authority given by the common-law procedure act must be governed by those principles which, for a long series of years, have been recognized in courts of equity, where the law as to discovery has grown up and been matured. The legislature have invested the courts of law with this authority in order that parties might get relief without incurring the additional expense of going to a court of equity. They must be taken to have done this with full knowledge of the principles and rules according to which this subsidiary power had always been administered in courts of equity, and, as they have not expressly given larger power, they may have intended that it should be exercised with the same limitations. But, whether we are fettered or left free to exercise our judicial discretion, we ought to abide by the principle on which this branch of jurisprudence has for centuries been administered in courts of equity."

The same tendency is found in this country. In *Wilson* v. *Webber*, 2 Gray, 558, it is said that—

"The [Massachusetts] statute authorizes the filing of interrogatories for the discovery of facts and documents material to the support or defense of the suit, to be answered on oath by the adverse party. * * * The main purpose of these provisions of the practice act was to substitute, in place of the tedious, expensive, and complex process of a bill of discovery on the equity side of

the court, an easy, cheap, and simple mode of interrogating an adverse party, as incident to and part of the proceedings in the cause in which the discovery was sought. It was not intended to make the parties to a cause witnesses, who might, at the pleasure of the party interrogating, be made to testify respecting the whole case; but only to give a limited right to obtain evidence from an adverse party, in analogy to the well-settled rules regulating bills of discovery in the court of chancery in England."

The court of appeals in New York has construed in the same manner similar provisions of the Code of that State. *Glenney* v. *Stedwell,* 64 N. Y. 120, 123. Judge Folger, speaking for the court, said:

"We find that in reporting the provisions of the Code for the examination of parties to actions, which prohibit the bringing of a bill of discovery in one action in aid of another action, the commissioners meant them to be a means of accomplishing substantially the same ends which were attained in a court of equity in the exercise of its jurisdiction to compel a discovery."

The title to the act is:

"An act to provide for proceedings in the nature of proceedings for discovery in actions or proceedings commenced in any of the courts of record of this State, and to provide for the examination of parties to such proceedings, and to compel the production of books and papers." Pub. Acts 1895, Act No. 181.

In view of the fact that this court has held that bills of discovery are obsolete, it is a natural inference that the legislature provided a substitute for that practice, and that it should be simplified as far as possible; and, while we may doubt the wisdom of allowing discovery without an order of the court, fixing the matter to be inquired about, the act is not to be held invalid unless it infringes the Constitution or is so crude that it cannot be given effect. We may, however, follow the cases cited, and limit the proceedings under it by the rules uniformly recognized as applying to discovery, a term having a well-defined meaning. Especially may we do this inas-

much as the title does not necessarily imply that it was the design to permit parties to require their adversaries to show the matters upon which they rely to meet the case made against them.

We are not able to say that the act is unconstitutional upon the ground that it discriminates between suitors, because it denies to the party who testifies the right to introduce the testimony, while it permits his adversary to do so. The object of the act, like the proceeding in equity, is to give to the moving party the benefit of information to be derived from his adversary. The testimony is in the nature of an admission, and we see no reason why it should not be made available in this way.

A more troublesome question arises in connection with those provisions which seem to confer upon the judge at chambers and the circuit court commissioner the power to determine what is relevant to the issue, and to enforce answers by proceedings for contempt. It will be noticed that the act gives the power to the commissioner to enforce compliance with the statute by proceedings for contempt, and not a remedy to the party to enforce his rights by means of contempt proceedings; thereby, in our opinion, indicating that the legislature meant that the refractory witness might be punished by such a judge or commissioner. The extent of the powers of these officers is not clearly defined, and this court has never attempted to lay down a rule by which it could be unerringly determined. It has, however, decided that, with the exception of certain things which had been lawfully done by them prior to the adoption of the present Constitution, such officers have no authority to perform acts strictly judicial. It has not been the practice for officers empowered to take testimony to attempt to do either of those things, and we have understood the consensus of opinion to be that they were beyond their power. As to contempts, there can be no question of the correctness of this view, while the constitutionality of an act authorizing such officer to decide upon questions of relevancy

and exclude or admit answers is perhaps more questionable. Our Constitution has limited the powers which may be conferred upon circuit court commissioners by vesting them with judicial powers not exceeding those of a judge at chambers. And while this court has recognized the authority of the commissioner to exercise judicial power in some instances, it seems to confine such authority to cases where such power was exercised by a judge at chambers before the adoption of the Constitution, and it has declared that the Constitution (article 6, § 16) "permitted giving to the commissioners judicial powers in a very subordinate sense only; powers of the sort that are usually denominated *quasi* judicial." See *Burger's Case,* 39 Mich. 204; *Risser* v. *Hoyt,* 53 Mich. 185.

Counsel for the relator cite us to the case of *Shepard* v. *Kent Circuit Judge,* 109 Mich. 606, which they say decides that the power to punish for contempt is within the authority of a judge at chambers. That case arose under chapter 278 of 2 How. Stat., which is an act providing for proceedings at law in the nature of a creditor's bill. The act provides that, upon a satisfactory showing by affidavit, a judge or commissioner may require a person to appear before himself or a referee for examination in relation to the indebtedness of such person, etc., to the judgment debtor, etc. The validity of such act has been questioned, first in *Reed* v. *Baker,* 42 Mich. 272, where it was severely criticised. It was the basis of a proceeding in which the bill of complaint was dismissed by this court in the case of *Prescott* v. *Pfeiffer,* 57 Mich. 23, but in that case no constitutional question appears to have been raised. Again, in the case of *Lee* v. *Kalamazoo Circuit Judge,* 101 Mich. 407, this act was considered, and it was held that it would support proceedings to examine the judgment debtor, and to discover his assets. It has never gone further. The statute contains the following provisions, viz. : " The judge may allow to the judgment creditor, or to any party examined, whether a party to the action or not, witness fees and disbursements, and a

fixed sum in addition, not exceeding $30, as costs." 2 How. Stat. § 8114. "Any of the proceedings authorized by this act to be had before the judge may be had before him in court, at any session of the circuit court, or at chambers." Id. § 8116. In the *Shepard Case* proceedings were taken before the circuit court (not the judge) to punish a witness for contempt, consisting of a refusal to appear before a commissioner, apparently upon a subpœna from the commissioner. It was contended that this act did not authorize proceedings in court to punish for the contempt, but it was held that section 8115, 2 How. Stat., contemplated such action, and the power of the circuit judge at chambers does not appear to have been questioned in the case. So far as the proceedings for contempt are concerned, we might perhaps sustain the act, leaving the circuit court to deal with such proceedings, as was done in the case of *Shepard* v. *Kent Circuit Judge.*

The object of the act under discussion is to enable a party to obtain discovery of matters relevant to the issue. It as plainly attempts to deny discovery as to other matters. It names an officer supposed to possess the necessary power to determine the question, and it also undertakes to give the testimony taken the force of evidence. It makes no provision for exceptions, or review by the court of the rulings of the commissioner, as in the case of depositions. Such rulings are final, and such irrelevant matters, if admitted, may come before the jury. Rulings upon the introduction of testimony are vital to the determination of the case. They may or may not constitute error calling for its reversal, and, where decisive of the right of the jury to hear and act upon testimony, cannot be called *quasi* judicial acts. They are strictly judicial, and must be determined by an officer having judicial powers, and usually, if not necessarily, the one who is to decide the case. We must, therefore, hold that the provision permitting the judge or commissioner to pass upon the relevancy of testimony to be used upon the

trial was invalid, and, as it is plain that an attempt was made to protect the party examined from improper examination, we cannot say that this provision should be eliminated, and the testimony taken with objections and exceptions, as in case of taking depositions; nor do we feel at liberty to hold that the commissioner may pass upon the question of relevancy, but that the testimony thus taken cannot be used as evidence, inasmuch as the act seems to be designed to enable parties to take testimony which may be used in the case. We are not sure that the legislature would have permitted rulings by the officers named had it supposed that they did not possess the necessary judicial qualifications for a final determination of such questions, and we think it prudent to hold the entire act invalid, leaving it to the legislature to repair any possible mischief by such legislation as may be deemed necessary.

The writ is denied.

The other Justices concurred.